Thank you. Good morning. May it please the court Charles Bonneau Jr. appearing for appellant Baljit Singh. Your Honours, this case arises from a 2254 action alleging ineffective assistance of counsel. This category of cases is governed by the Supreme Court decision in Harrington v. Richter which states that the federal court must look to any reasonable explanation for the state court's denial of relief. And in this case, as we see sometimes as a snowball effect where every time the case becomes comes before a court, there is some opportunity to for someone to chime in. At this point, I've identified seven reasons, which I'd like to address all of them if I can, within the time allotted, reasons that have been advanced to explain the state court denial. The first of those was advanced by the public defender herself, who said that she opted to abandon the mental state defense at the guilt phase in favor of an identity defense. In other words, questioning whether the defendant was really the perpetrator. That doesn't jive with the transcript of her argument in which she did advance a mental state argument. And perhaps it had some effect because the jury returned second degree. Secondly, she relied on the defendants. Can I ask you an informational question? Yes. She didn't say that the defendant instructed her to raise that defense or insisted on raising that defense. As I understand her affidavit, she said that's just what he told her. He said that, yes, it's not a consistent, he took no consistent position, but she felt that she would be more in tune or in sync with him by by presenting this identity defense. He's actually, we have a record of where he, he was all over the board. He filed five, what we call Marsden motions, and he had all, he had several different ideas about how to defend the case. But she felt that there would be more harmony between them if she presented the rationale she came down to in her declaration. But it's not what she presented to the jury. She did present a mental state defense to the jury. That was in her. She didn't present that in terms of expert witnesses. She did it in terms of her in terms of what she argued to the jury. Is that right? That's the problem. This court and in Jones versus Davis is has spoken about how the context has to be provided by an expert witness. You can't advance this kind of a defense ad hoc unless you're hoping that the jury will step in as they So could you explain, as I understand it, California doesn't allow full insanity defenses to be presented at the guilt phase. Could you explain what you think she should have presented and how it comports with what is allowed? Well, that's a very large subject. The Ninth Circuit has spoken about that in the in the in the mental state defense at the guilt phase. The the the burden is on the prosecution and the defense raises a reasonable doubt the at the sanity. But what I'm trying to ask is, were you hoping is your argument that counsel should have presented evidence that he was hallucinating, that he didn't know who his wife was? What is it that you think they should have said? No, what we know that they could have presented was the was the diagnosis of a basically a schizo schizoaffective disorder was the term that they came up with. The jury didn't hear that. They didn't know if the defendant had a diagnosable mental condition or not. Once the jury knows that, then there's then there are jury instructions that are triggered that will which we've cited, which will direct the jury's consideration of that lesser included offenses that but that's only triggered if you present an expert and it wasn't in the instructions weren't read. But would the expert have said that he could not form any intent because of insanity? Or what what is it that the expert would have said at the guilt phase that would have been allowed? Under California law, the expert is not permitted to express an opinion on the ultimate issue. Whether the whether the defendant had a mental particular mental state or not. What the what it's what we call diminished actuality. In the in California law, the the doctor will testify to the mental condition basically and how it how it affects the the defendant's mental process. He has to stop short of actually expressing an opinion on the ultimate issue of of premeditation or intent. The that's different from the sanity phase where the doctor does actually say that he's legally insane. That's so that's one difference between the and what would the diminished actuality defense have sounded like here? What would the doctor have said at the guilt phase? The Well, the doctor would have said that I have examined this person and he's suffering from schizoaffective disorder that interferes with his reasoning process, and his perceptions and his ability to control himself. And therefore he thought his wife was a demon or therefore what? No, there's no evidence in this record that the defendant thought his wife was a demon or that what he thought that she was the burglar. There's or that he she was attacking him. There's none of we don't he never said those things. So he didn't. He didn't. There's no identifiable delusion that that was expressed in any of these interviews. However, the the doctors would testify that he had a very serious mental disorder. And that's generally backed up by the by the circumstantial evidence in the case. So it's a it's a strong, it's a strong mental state defense. And that defense would have would have shown that he couldn't deliberate but could have voluntary manslaughter like could voluntarily act and know what he was doing, but just not deliberate. I'm still having trouble understanding what this defense would have said about what he's capable of or was doing at the time. Well, we can't present diminished capacity defense. But the doctor could say that on the date of the offense, he did not actually premeditate. He did not intend to kill and did not intend to kill then how is voluntary manslaughter I thought voluntary manslaughter was the lesser included offense that you wanted? Well, that you could you could get to that or you could get to an acquittal altogether. Normally, in this situation, it triggers a manslaughter instruction. Because clearly both sides don't want an either or choice. So would it would normally would trigger a manslaughter instruction when you have this serious, serious mental condition that's presented. And, and it wasn't so the so the surrendered the possibility of just simply getting an acquittal for lack of lack of intent. Maybe you can address given you're not going to make it through all seven of those points, your time is already up. But maybe you can address maybe you can address though the the prejudice prong of the Strickland analysis, given that the jury made it the finding that it did at the sanity phase, what what do you say as to prejudice? Well, the I think that's the least of the least of the my concerns with this, with with this argument, the sanity verdict doesn't mean that the jurors disbelieved the doctors, it just means that the defense didn't carry the burden. And that's actually, I doubt that anybody looking at this case would say that this person isn't mentally ill. It just simply means that he wasn't legally insane. As you know, that's, that's a high. The McNaughton standard is a high standard. And it's more often not met. But diminished actuality is an entirely different thing. And actually, the jury actually went so far as to not find premeditation even without any, any expert testimony. So that just illustrates that there are different issues. And had the jury heard these doctors, the there's a reasonable possibility that the that they would have returned a manslaughter verdict or acquitted for lack of just simply lack of intent to kill. Okay, I'd like to go through the rest of the points. But you don't you don't have the time to do that. We've made it in the in the science supplemental citation. Yes. Okay. Thank you. We'll give you a couple minutes for rebuttal. Let's hear from the state. Thank you. Good morning, Your Honors. I'm glad that counsel finally said what he meant that he said he, upon questioning by Judge Freeland said the doctor would have said in fact, he did not premeditate and did not intend to kill. Well, there are two big problems with that. One, in his opening brief, he candidly admits, that's absolutely something doctors cannot attest to whether a necessary mental element was present. That's a page eight, 18 of his AOB. And where he concedes, no, they most definitely cannot say the mental element required for defense is absent. They can talk about whether his about any mental illnesses that he has. Well, obviously, the jury thought that he had a problem. And so did the so did the his lawyer. In her summation, when you say the jury thought he had a problem, are you referring simply to the fact that they didn't find premeditation deliberation proven beyond reason found him not guilty? Yes, of that, of that guilty just means you have a reasonable doubt. And what we had here was a circumstance in which they came across a body, there was no direct evidence of premeditation. So it's not really meaningful to say that somehow, you could establish premeditation by circumstantial evidence. His lawyer argued it to the jury. She said, we've already heard testimony that Singh wasn't doing well that he was sick. We know we know that occurs because even his uncle tells us that he's not the same, you know, there's something wrong, and he would stare out into space. And she goes on and on. And it also quotes saying that he also from er 60. He also did state that again, you know, about bulge, it did not seem normal at the time, because he was mumbling to himself. And he would look at him without blinking for some time, he would show little surprise, as if he's in this world, another world. And so again, if that's what's going on with her husband for a couple of months, you might not be as bubbly as you normally are. Well, it is from the summation of defense counsel who who argues what she said, she didn't want to argue, she didn't want to put an evidence on. No, what she said was she didn't present the defense, which is easily susceptible to an interpretation that she did not choose to present experts on it. Not that she wasn't going to argue that the prosecution I know, but the reason she gave for not putting experts in seems to be operate on the assumption that she wanted to put everything that that somehow she would have had to have litigated the issue of his sanity twice once before the jury and the guilt phase and once in the in the sanity phase. But that's simply not true. And that's the testimony because because the testimony would not have been admissible in terms of this of his legal sanity would not have been admissible at the trial. So it wouldn't have been any, any, any duplication of, of, of a defense. Well, that presumes that she had there was more evidence of mental illness. That wasn't insanity. The only declarations provided were conclusions that the defendant was insane. He was that he operated on delusion that he was out of touch with the reality. I looked through, I was looking for, I couldn't find the testimony that they actually, at least in the record, I couldn't find the testimony that actually gave it the sanity hearing, but I was looking at the exhibits, which the doctors wrote their diagnosis. And they did say they gave various diagnoses about his mental, his mental illness. In fact, you know, this, this was not the, if we were lay people, then the jury were, was, we would say this was not the act of someone who was, who was normal. But we are not, but this is not a lay issue, Your Honor. This is a question. Their diagnoses were that he had disordered and delusional thinking and loss of contact with reality. That's Dr. Chelson. Dr. Rogerson was, he was depressed, delusional and had no understanding of what was going on at the time of the crime. That is legal insanity. We have no other, this record contains no other statements by those doctors that here's what I could have said outside the realm of insanity, or that my was not insanity. The only thing, an appellant in his opening brief was very candid on it. It's only in his reply brief that he gets a bit more vague. His opening brief talks about how he was delusional at the time of killing, and that the evidence was that he was insane. Now that's being very carefully omitted from the reply brief, once we pointed out Elmore, which says, well, those are all evidence of insanity. There's no, where is all this emphasis on delusional? I read the doctor's reports. As I said, I couldn't find in the record, their actual testimony at the sanity hearing. And it didn't seem to me that they were focused. They may have the word delusional may have appeared at some of their reports. But that was not, as I read it, in the various attachment. They talked about a lot of things. You know, for example, I'm looking at Dr. Shelson, I guess. And he says, Mr. Singh indicated that he's continuing to take an antidepressant agent, which is originally prescribed. He suffers from headaches, body pains in his hands, he goes on and in the clinical view, and the clinical interview. I don't see any. I'm just quickly looking through it. I didn't see anything. In fact, he talks about a prior psychiatric hospitalization that he had. And I'm not I'm not even sure in this particular report that he talks about the word delusional his his diagnostic impressions are major depressions, moderate, no personality disorder, headache, body pain, severe, major depression, diagnostic impressions at the time of the offense, major, severe, with stressors. Mr. Singh appears to have slowly spiral into a state of psychotic depression in the weeks proximal to the instant defense. I'll go on but I don't see a lot of I don't I don't see it in his diagnostic conclusions. I sanity hearing is not part of the record. My law clerk couldn't find it. District Court record as well. She said she couldn't find it. But I think I think that I think that the jury understood there was something wrong with him as the as the defense counsel argued. The problem is the question is what, because if what's wrong with him, is that he's insane, then you can't present that defense at the guilt phase. You are presuming with all due respect, your honor, that you can parse expert testimony and come up with a different set of testimony by taking parts of one thing and avoiding others. There's nothing on the record to show that the experts thought they could do that with their own testimony. Well, you could you could you could have them give their evaluations of his mental health without any statement that they thought that he was insane in the legal sense. You presume that your honor, you have no evidence of that. I don't know. Because it may well be that counsel said, Do you have an opinion apart from that? And they told counsel? No, you simply don't know your honor, you're simply presuming. And every presumption must be the counsel did the right thing, not the dumb thing. So if counsel didn't do what you did, and it didn't, and we have to presume the counsel had a good reason for what counsel didn't do. I don't have I can presume it, but it's not a conclusive presumption. No, you can't presume it at all. Because you have to presume that what counsel did was a smart thing, your honor. And what you're saying is that you're trying to you could you could look at what she argued to the jury. Yes, she did. She may do with what argument that it would have been an even stronger argument, if she had presented mental health evidence excluding the conclusion about whether he was legally sane or not, which deals with the issue of whether he knew what he was doing in short was was was right or wrong. And as soon as the prosecutor gets up and says, Aren't you really saying he's insane? Isn't aren't what you're really trying to do is is use describe insanity without using the words, and then it would have been stricken, your honor. But we have we have a declaration from counsel about what the reasons were. And I don't read it as saying anything about how this evidence would have been inadmissible. Instead, she just says she thinks it would be better to save it for later. Well, that's true, your honor. But that doesn't change the fact that it was inadmissible. But you are saying we have to assume that she made the decision for the right reason. And is that true? When we have a declaration saying what her reason was, that's not that reason? Your Honor, I am not saying that you have to presume that she had. Let me be clear, the California Supreme Court denied relief, they could have denied it without even bothering to look at counsel's reasons. Because the California Supreme Court could have found this stuff just flat out inadmissible. Counsel may or may not have thought about that, in addition to her other reasons. But California Supreme Court could have decided this very simply without even bothering. And is that because inadmissibility would show a lack of prejudice? Because even if she had tried, it wouldn't have been let in? It's well, it also shows objective reasonableness in not trying to admit, your honor. You're over, you're over your time. And unless Judge Corman has any further questions, we'll hear rebuttal. Okay, let's put two minutes on the clock for rebuttal, please. Your Honor, this would be an Elmore type case, if the defendant said that I saw this figure in the other room. And I looked at it and it was, I thought it was a burglar, an intruder. So I grabbed a knife, and I stabbed the intruder, and it turned out to be my wife, that that would be a delusion. That that that he would, he never said that. So this is not an Elmore type case. He, the defendant is mentally disordered. So he has made up things subsequently, that he may believe that that aren't aren't true. They're not verifiable and not consistent with the with the record. And indeed, the State Court of Appeals said that there is no evidence to support that that theory. And it's and in that sense, it what he thinks happened is delusional. But he does not rely on a delusion on a defense of self defense based on a delusion. That's what makes this different from Elmore. And, and the cases subsequent to it, which I didn't have time to put in a 28 J letter, but the Court of Appeal, people versus Schuller, S-C-H-U-L-L-E-R. The only citation I have is their case number C-0-8-7-1-9-1, which really discusses the whole Elmore subject and when it arises and when it doesn't arise. And I think that would support what what we're saying here today. Okay. All right. Thank you, counsel. The case just argued is submitted.
judges: WATFORD, FRIEDLAND, Korman